GOODMAN HOLDINGS; **Anglo Irish Beef Processors International, Appellants,**

v.

**RAFIDAIN BANK, Appellee.**

No. 92–7246.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 1, 1994.

Decided June 24, 1994.

Suggestion for Rehearing In Banc Denied Sept. 7, 1994.

**1144**

Kenneth W. Starr argued the cause, for the appellants. On brief were David G. Norrell, Dawn P. Danzeisen and Samuel A. Haubold.

Edward L. Powers argued the cause, for the appellee. On brief was Brian T. Murnane. Arthur J. Levine entered an appearance.

Before: WALD, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

Concurring opinion filed by Circuit Judge WALD.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Goodman Holdings and its subsidiary Anglo Irish Beef Processors International (Goodman), both Irish corporations, brought this action to recover payments due on letters of credit issued in their favor by Rafi-dain Bank (Rafidain) and Rasheed Bank (Rasheed), both of them branches of the Iraqi government. The district court dismissed the action for lack of subject-matter jurisdiction on the ground that Rafidain enjoys sovereign immunity from this suit under 28 U.S.C. § 1604. Goodman appeals the dismissal asserting, as it did below, that Rafidain is deprived of its immunity here under the "commercial activity" and "direct effect" exceptions to statutory sovereign immunity, as set out in 28 U.S.C. § 1605(a)(2). For the reasons set forth below, we conclude that Rafidain enjoys sovereign immunity and that the action was therefore properly dismissed.

The facts, as alleged by Goodman, are fairly simple. Between March 1986 and January 1990 Rafidain and Rasheed issued fourteen irrevocable letters of credit, redeemable in installments, to pay for meat purchased from and delivered by Goodman to three corporations owned by the Iraqi government. Between November 1987 and July 1990 thirteen installments were paid on the letters, mostly from accounts in United States banks. Since the Iraqi invasion of Kuwait in August 1990, however, no additional payments have been made and Goodman contends it is still owed $302,246,923 plus interest.

Goodman initially filed suit in England to recover the balance due on the letters but that action was stayed when Rafidain was subjected to involuntary liquidation in the English courts. Goodman then filed this action in October 1991. Rafidain moved to dismiss on three alternative grounds: lack of subject-matter jurisdiction, lack of personal jurisdiction and *forum non conveniens*. By memorandum and order filed December 16, 1992 the district court granted Rafidain's motion to dismiss for lack of subject-matter jurisdiction, concluding that Rafidain's sovereign immunity under 28 U.S.C. § 1604 is unaffected by subsection 1605(a)(2)'s commercial activity and direct effect exceptions to that immunity. Goodman appeals the district court's dismissal on two grounds: (1) this action comes within each of the cited exceptions and (2) the district court erroneously deprived Goodman of discovery necessary to establish subject-matter jurisdiction. We reject both arguments.

First, we agree with the district court that, under the facts alleged, Rafidain as a branch of the Iraqi government enjoys statutory sovereign immunity from this action. The immunity statute provides foreign governments with blanket immunity from suit in United States courts, subject only to specific exceptions:

### Immunity of a foreign state from jurisdiction

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

28 U.S.C. § 1604. It is undisputed that Rafidain, as a branch of the Iraqi government, is a foreign state generally entitled to immunity under this section. Goodman contends, however, that this particular action comes within both the commercial activity and direct effect exceptions, set out in the first and third clauses of subsection 1605(a)(2). That subsection provides:

A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

. . . . .

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

. . . .

28 U.S.C. § 1605(a)(2). We find neither the first nor the third clause applicable here.[1]

■ Goodman first invokes the commercial activity exception, asserting this action is "based upon a commercial activity carried on in the United States by the foreign state," namely Rafidain's deposit of substantial funds in United States banks and its use of some of those funds to make payments due under the letters of credit. We disagree.

The Supreme Court recently had occasion to interpret the commercial activity exception in *Saudi Arabia v. Nelson,* — U.S. —, — — —, 113 S.Ct. 1471, 1477–78, 123 L.Ed.2d 47 (1993). In that case Scott Nelson and his wife, American citizens, brought a tort action against the Saudi Government, which had recruited and hired Scott in the United States to work in a Saudi hospital. The complaint alleged that Saudi authorities later falsely imprisoned and assaulted Scott in retaliation for reporting safety threats in the hospital. The Court determined that, although the recruitment and hiring, which took place in this country, "led to the conduct that eventually injured the Nelsons, they are not the basis for the Nelsons' suit." *Id.* at —, 113 S.Ct. at 1478. Rather, the Court concluded, Saudi Arabia's "torts, and not the arguably commercial activities that preceded their commission, form the basis for the Nelsons' suit." *Id.* at —, 113 S.Ct. at 1478. In reaching its decision, the Court construed the phrase "based upon," as used in the commercial activity exception, very narrowly:

Although the Act contains no definition of the phrase "based upon," and the relatively sparse legislative history offers no assistance, guidance is hardly necessary. In denoting conduct that forms the "basis," or "foundation," for a claim, *see* Black's Law Dictionary 151 (6th ed. 1990) (defining "base"); Random House Dictionary 172 (2d ed. 1987) (same); Webster's Third New International Dictionary 180, 181 (1976) (defining "base" and "based"), the phrase is read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case. *See Callejo v. Bancomer, S.A.,* 764 F.2d 1101, 1109 (CA5 1985) (focus should be on the "gravamen of the complaint"); *accord, Santos v. Compagnie Nationale Air France,* 934 F.2d 890, 893 (CA7 1991) ("An action is based upon the elements that prove the claim, no more and no less"); *Millen Industries, Inc. v. Coordination Council for North*

---

1. Goodman does not rely on and we therefore do not address the second clause of the subsection.

*American Affairs,* 272 U.S.App.D.C. 240, 246, 855 F.2d 879, 885 (1988).

What the natural meaning of the phrase "based upon" suggests, the context confirms.... Congress manifestly understood there to be a difference between a suit "based upon" commercial activity and one "based upon" acts performed "in connection with" such activity. The only reasonable reading of the former term calls for something more than a mere connection with, or relation to, commercial activity.

*Saudi Arabia v. Nelson,* —— U.S. ——, —— - ——. 113 S.Ct. 1471, 1477–78, 123 L.Ed.2d 47 (1993).[2] Applying this construction here, we must reject Goodman's first jurisdictional argument. Goodman has at most established a "relationship" or "connection" between its claim and the domestic commercial activity alleged here—Rafidain's maintaining accounts in United States banks and paying Goodman from those accounts. Goodman has not shown, as the decision in *Saudi Arabia* requires, that the domestic commercial activity constitutes an "element[ ] of a claim that ... would entitle [Goodman] to relief under [its] theory of the case." As Goodman acknowledges, all it need prove to establish its claim is that Rafidain issued the letters of credit and dishonored a payment demand that conformed to the letters' requirements. *See* Brief for the Appellants at 7 n. 4; *see also* John F. Dolan, *The Law of Letters of Credit* ¶ 9.02[2], at 9–6 (2d ed. 1991) ("It is well settled that an issuer that dishonors a beneficiary's conforming presentation has breached the credit engagement and must respond in damages."). Thus, the domestic commercial banking activities Goodman cites are legally irrelevant to its right of recovery under the letters of credit and, under *Saudi Arabia,* cannot form the "basis" for Goodman's suit so as to trigger the commercial activity exception to sovereign immunity.

Goodman next contends its suit comes within the "direct effect" exception in subsection 1605(a)(2)'s third clause because "the action is based ... upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." While this argument presents a closer case, we conclude that it too must fail.

In *Republic of Argentina v. Weltover, Inc.,* —— U.S. ——, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992), the Supreme Court considered the meaning of the phrase "direct effect" and defined it succinctly but clearly: '[A]n effect is 'direct' if it follows "as an immediate consequence of the defendant's ... activity." ' *Id.* at ——, 112 S.Ct. at 2168 (quoting *Weltover, Inc. v. Republic of Argentina,* 941 F.2d 145, 152 (2d Cir.1991)) (ellipsis by Court). Applying this construction, the Court then held that Argentina's rescheduling of the payment dates for certain of its bonds caused a direct effect in the United States so as to come within the exception where the bond payees "had designated their accounts in New York as the place of payment, and Argentina made some interest payments into those accounts before announcing that it was rescheduling the payments." *Id.* —— U.S. at ——, 112 S.Ct. at 2168. The Court reasoned: "Because New York was thus the place of performance for Argentina's ultimate contractual obligations, the rescheduling of those obligations necessarily had a 'direct effect' in the United States: Money that was supposed to have been delivered to a New York bank for deposit was not forthcoming." *Id.* The situation here is quite different. There has been no "immediate consequence" in the United States of Rafidain's failure to honor the letters. Neither New York nor any other United States location was designated as the "place of performance" where money was "supposed" to have been paid by Rafidain or to Goodman. Rafidain might well have paid

---

**2.** This court had earlier similarly construed the phrase "based upon," as used in the second clause of § 1605(a)(2) which is not invoked here, to require that there be "a direct causal connection" between the domestic act and the foreign commercial activity or that the domestic act be "an element of the cause of action under whatev-

er law governs his claims." *Gilson v. Republic of Ireland,* 682 F.2d 1022, 1027 n. 22 (D.C.Cir. 1982) (citing *Velidor v. L/P/G Benghazi,* 653 F.2d 812, 820 (3d Cir.1981), *cert. dismissed,* 455 U.S. 929, 102 S.Ct. 1297, 71 L.Ed.2d 474 (1982), *and Sugarman v. Aeromexico, Inc.,* 626 F.2d 270, 272–73 (3d Cir.1980)).

them from funds in United States banks but it might just as well have done so from accounts located outside of the United States, as it had apparently done before.[3] Thus, Rafidain does not lose its immunity under the direct effect exception. *Cf. International Hous. Ltd. v. Rafidain Bank Iraq,* 893 F.2d 8, 12 (2d Cir.1989) (payment on overdraft guaranties to Rafidain's New York bank account, at Rafidain's request, was not "direct effect" in United States because "[t]he benefit to Rafidain from such payments was at its situs in Iraq," "payment in New York City was not a contractual requirement" and New York bank's role "was that of a passive conduit indifferent to the nature or terms of the underlying transaction").

Finally, Goodman asserts that dismissal of the action was "premature" because many of its jurisdictional discovery requests of Rafidain and others remained unanswered at the time of dismissal. The Federal Rules of Civil Procedure generally provide for liberal discovery to establish jurisdictional facts. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 & n. 13, 98 S.Ct. 2380, & n. 13, 57 L.Ed.2d 253 (1978); *Crane v. Carr,* 814 F.2d 758, 760 (D.C.Cir.1987); *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 788 (D.C.Cir.1983). Nevertheless, the scope of discovery lies within the district court's discretion. *Naartex,* 722 F.2d at 788. Under the circumstances, we do not see what facts additional discovery could produce that would affect our jurisdictional analysis above and therefore conclude the district court did not abuse its discretion in dismissing the action when it did.

For the preceding reasons, the district court's dismissal for lack of subject-matter jurisdiction is

*Affirmed.*

WALD, Circuit Judge, concurring:

My colleagues base their finding that Rafidain's failure to honor Goodman's letters of credit had no "direct effect" in the United States in part on the fact that "[n]either New York nor any other United States location was designated as the 'place of performance' where money was 'supposed' to have been paid by Rafidain or Goodman." *Majority Opinion ("Maj.Op.")* at 1146. I write separately to emphasize that, for an act to have a "direct effect" in the United States, there is no prerequisite that the United States be contractually designated as the place of performance. If, for example, the letters of credit had specified that money must be funnelled to Ireland through the United States, a breach of the letters of credit would have had an "immediate consequence" in the United States: money that would have been transferred to Ireland would have remained in New York accounts. *Cf. Republic of Argentina v. Weltover,* —— U.S. ——, ——, 112 S.Ct. 2160, 2168, 119 L.Ed.2d 394 (1992) (finding direct effect where "money that was supposed to have been delivered to a New York bank for deposit was not forthcoming"). Moreover, even absent a contractual provision mandating the involvement of U.S. banks, if the longstanding consistent customary practice between Rafidain and Goodman had been for Rafidain to pay Goodman from its New York accounts, the breach of the letters of credit might well have had a direct and immediate consequence in the United States. As the majority points out, *see Maj. Op.* at 1147 n. 3, however, Goodman's complaint failed to allege such a longstanding and consistent practice; the complaint claims only that "[i]n the past, Rafidain has used ... funds on deposit at U.S. banks to effect payment to plaintiff Goodman Holdings in the United States on one or more of the letters of credit at issue in this action." Complaint ¶ 6. Thus I agree with my colleagues that in this case there was no direct effect in the United States within the meaning of 28 U.S.C. § 1605(a)(2), but I am uncomfortable with the reliance in their rationale on the lack of New York as a *contractually designated place of performance.*

---

3. For example, Rafidain's discovery admissions indicate that of the approximately $27,000,000 paid under the first letter, approximately $22,-000,000 was paid from United States accounts. *See* Appendix at 37–41. Goodman's complaint alleges only that "[i]n the past, Rafidain has used [funds] on deposit at U.S. Banks to effect payment to plaintiff Goodman Holdings in the United States on one or more of the letters of credit at issue in this action." Complaint ¶ 6.