GLOBAL INDEX, INC., Plaintiff,

v.

The Honorable H.E. Benjamin W. MKAPA, et al., Defendants.

No. CIV.A.02–01485(HHK).

United States District Court, District of Columbia.

Nov. 4, 2003.

---

Steve Larson-Jackson, Law Firm of Larson-Jackson, P.C., Washington, DC, for Plaintiff.

Lawrence Hedrick Martin, Paul Stuart Reichler, Foley Hoag LLP, Washington, DC, for Defendant.

## MEMORANDUM OPINION

KENNEDY, District Judge.

Plaintiff, Global Index, Inc. ("Global Index"), brings this action against defendants, Benjamin W. Mkapa, President of Tanzania, Amani A. Karume, President of Zanzibar, and Suleiman O. Nyanga, Zanzibar's Minister of Finance and Economic Affairs, for their failure to honor promissory notes issued by the government of Zanzibar. Before this court is defendants' motion to dismiss. Upon consideration of the motion, plaintiff's opposition thereto, and the record of this case, the court concludes that the motion must be granted.

## I. FACTUAL BACKGROUND

In July 1994, plaintiff, a private company incorporated in Maryland and headquartered in New York, allegedly received $400 million in promissory notes from the government of Zanzibar, a geopolitical entity that is part of the United Republic of Tanzania.[1] Plaintiff maintains that the promissory notes were to provide "funding and other means necessary to facilitate various infrastructure enhancements in Zanzibar," and that Tanzania "promised to pay [Global Index] the [face value of the notes] with interest thereon at the rate of six percent (6%) per annum." Compl. ¶¶ 7, 24. In August 1994, Westminster Bank in London informed plaintiff that it had received four $100 million promissory notes from the Tanzanian Ministry of Finance and that the bank was putting them in a sealed envelope in security deposit. In June 2002, plaintiff's counsel sent a letter demanding payment on the promissory notes to the Tanzanian Embassy. Plaintiff's letter indicated that the notes matured on July 28, 1997, and that Tanzania owed accrued interest after the maturity date, which plaintiff eventually claimed to be $125,704,329.

In July 2002, Zanzibar's Minister of Finance sent plaintiff a response which observed that "the Promissory Notes were issued in the name of the Government of Zanzibar by the Signatories" without acknowledging Zanzibar's obligation to pay. Pl.'s Ex. ·E at 1 (Raphael Ltr. to Larson–Jackson, July 16, 2002). Indeed, the letter asserted that there was "no evidence whatsoever that Zanzibar enjoyed any financial benefits from the issued Promissory Notes" and that the $400 million issuance had far exceed the statutory limit that Zanzibar's law allowed the Minister of Finance to raise. *See id.* At 1–2. The Finance Minister then requested that plaintiff "assist in identifying types of benefits that [Zanzibar] enjoyed from the issued Promissory Notes . . . and any other evidence that will help the Government

---

1.  Tanzania, formed by the union of Tanganyika and Zanzibar, is a unitary government consisting of the Union Government and the semi-autonomous Zanzibar Revolutionary Government.  Plaintiff contends that Zanzibar issued the promissory notes, but that Tanzania remains ultimately responsible for the obligations.

consider further this request." *Id.* at 2. Plaintiff, without answering the letter, filed this action shortly after, claiming a loss of $525,704,329, including accrued interest, as a result of defendants' non-payment.

## II. ANALYSIS

### A. Defendants as Foreign Sovereigns

Plaintiff brings this action against President Mkapa, President Karume, and Minister Nyanga in their official capacities and as representatives of a foreign sovereign. Consequently, the exclusive basis for this court to exercise jurisdiction over this suit is the Foreign Sovereign Immunity Act (FSIA), 28 U.S.C. § 1602 *et seq.* *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989) ("We think that the text and structure of the FSIA demonstrate Congress' intention that the FSIA be the sole basis for obtaining jurisdiction over a foreign state in our courts.").

The FSIA's definition of "foreign state" includes (1) a political subdivision of a foreign state, (2) an organ, agency, separate legal person or corporate instrumentality of a foreign state, or (3) a political subdivision. 28 U.S.C. § 1603(a)-(b). However, it is well-settled that individuals who act in their official capacities on behalf of a foreign sovereign "are considered agencies or instrumentalities of a foreign state." *Jungquist v. Sheikh Sultan Bin Khalifa*, 115 F.3d 1020, 1027 (D.C.Cir.1997) (internal citations and quotations omitted); *Park v. Shin*, 313 F.3d 1138, 1144 (9th Cir.2002) (" '[A] suit against an individual acting in his official capacity is the practical equivalent of a suit against the sover-

eign directly.' ") (quoting *Hilao v. Estate of Marcos (In re Estate of Marcos )*, 25 F.3d 1467, 1472 (9th Cir.1994)).

■ The parties agree that the present action is maintained against defendants in their official roles as the highest members of the Tanzanian government. *See* Pl.'s Opp'n to Defs.' Mot. to Dismiss Compl. ("Pl.'s Opp'n") at 9 ("[T]he purpose of this lawsuit is to hold the responsible government entities responsible [*sic* ] for breach of contract and not the parties in their individual capacities."); Defs.' Mot. to Dismiss Compl. ("Defs.' Mot.") at 5 ("Given that Global Index complains of actions taken by the Defendants in their official capacities as agents of a foreign sovereign, the Defendants are entitled to be treated as foreign states, and are presumptively immune from the jurisdiction of this Court."). There is little question, therefore, that defendants are a "foreign state" for purposes of analysis under the FSIA.

### B. Standard for Motion to Dismiss

■ Usually, a motion to dismiss for lack of jurisdiction should not prevail "unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." *Kowal v. MCI Commun. Corp.*, 16 F.3d 1271. And, at the dismissal stage, the plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.Cir. 1997).[2] Because the FSIA immunizes states from suit, not just liability, however, a different standard applies to a motion to

---

2. In resolving motions for lack of jurisdiction, unlike motions brought under 12(b)(6), courts are generally free to consider relevant materials outside the pleadings. *Artis v. Greenspan*, 223 F.Supp.2d 149, 152 (D.D.C.2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject-matter jurisdiction.").

dismiss for lack of jurisdiction in FSIA cases. In a FSIA case, after the defendant has produced prima facie evidence supporting its entitlement to immunity, "the burden of going forward ... shift[s] to the plaintiff to produce evidence establishing that the foreign state is not entitled to immunity." H.R.Rep. No. 94–1487, at 17 (1976). The defendant then has the ultimate burden of proving immunity. *See, e.g., Transamerican S.S. Corp. v. Somali Democratic Republic,* 767 F.2d 998, 1002 (D.C.Cir.1985). When a defendant "challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, then the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the plaintiff." *Phoenix Consulting, Inc. v. Republic of Angola,* 216 F.3d 36, 40 (D.C.Cir. 2000). However, if a defendant challenges the factual basis of jurisdiction, "the court may not deny the motion to dismiss merely by assuming the truths of the facts as alleged by plaintiff;" rather, the court must "go beyond the pleadings and resolve any disputed issue of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Id.* (citing *Jungquist,* 115 F.3d at 1027–28; *Foremost–McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438, 448–49 (D.C.Cir.1990)).

While the court has "considerable latitude in devising procedures ... to ferret out the facts pertinent to jurisdiction," *id.,* it must carefully control and limit jurisdictional discovery, "lest the evaluation of immunity itself encroach unduly on the benefits the immunity was to ensure." *In re Papandreou,* 139 F.3d 247, 253 (D.C.Cir.1998). As a result, throughout this analysis of the motion to dismiss for lack of jurisdiction under the FSIA, the court must attempt to resolve any factual disputes between the parties.

### C. Subject Matter Jurisdiction under FSIA

██ Because jurisdiction in this case [3] is premised exclusively on the FSIA, 28 U.S.C. § 1602 *et seq.,* defendants are presumptively immune from suits brought against them in the United States. *See Amerada Hess,* 488 U.S. at 434, 109 S.Ct. 683. There are several exceptions to this general grant of immunity, *see* 28 U.S.C. §§ 1605–1607, however, and a court has jurisdiction over a suit against a foreign state if an exception to the FSIA applies. *See* 28 U.S.C. § 1605.

In this case, plaintiff does not dispute that defendants have established, prima facie, their immunity under the FSIA. To avoid dismissal, plaintiff invokes the "commercial activity" exception in § 1605(a)(2). In pertinent part § 1605(a)(2) states that

A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case ... in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States ...

28 U.S.C. § 1605(a)(2). Specifically, plaintiff invokes only the third clause, or "direct effect" exception.

**3.** Plaintiff initially invoked this court's diversity jurisdiction under 28 U.S.C. § 1332. *See* Compl. ¶ 1. In its opposition to defendants' motion to dismiss, however, plaintiff asserted jurisdiction under the FSIA. *See* Pl.'s Opp'n at 2.

■ In order to determine whether this court may exercise jurisdiction over this suit under the third clause of § 1605(a)(2), it must make two discrete inquiries. First, the court must determine whether this action is based upon a commercial activity of a foreign state outside of the United States. *See Virtual Def. & Dev. Int'l, Inc. v. Republic of Moldova,* 133 F.Supp.2d 1, 3 (D.D.C.1999). Second, the court must determine whether the commercial activity alleged caused a direct effect in the United States. *See Virtual Def., Dev. Int'l, Inc.,* 133 F.Supp.2d at 3.

■ As for the first inquiry, this action is based on the alleged non-payment of promissory notes. The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). In determining the commercial character of an activity, a court shall make "reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). The Supreme Court has established that a foreign state engages in commercial activity when its actions are the "type . . . by which a private party engages in trade or traffic or commerce." *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 614, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992). *Weltover* further indicated that "garden variety debt instruments," like promissory notes, constitute a commercial activity under § 1605(a)(2). *Id.* at 615, 112 S.Ct. 2160 (finding bonds issued by Argentine government to be a commercial act); *see also Falcon Investments, Inc. v. Republic of Venezuela,* 2001 WL 584346, at *2 (D.Kan. May 22, 2001) (determining, with

"no hesitation," that Venezuela's issuance of promissory notes was a commercial activity). In this case, plaintiff asserts that by issuing promissory notes, defendants acted as private parties engaged in trade or commerce under *Weltover.* Defendants do not challenge this. Therefore, this court has no difficulty finding the Tanzanian promissory notes to be a commercial activity under § 1605(a)(2).

The court now turns to the second inquiry: Did the commercial activity cause a direct effect? The Supreme Court has stated that "an effect is direct if it follows as an immediate consequence of the defendant's . . . activity." *Weltover,* 504 U.S. at 618, 112 S.Ct. 2160; *see also Croesus EMTR Master Fund L.P. v. Brazil,* 212 F.Supp.2d 30, 35–36 (D.D.C.2002) (explaining that an effect is direct if it " 'has no intervening element, but rather, flows in a straight line without deviation or interruption' ") (quoting *Princz v. Germany,* 26 F.3d 1166, 1172 (D.C.Cir.1994)). "Purely trivial effects in the United States" are not sufficient; § 1605(a)(2) requires that such effects be substantial or foreseeable. *Weltover,* 504 U.S. at 618, 112 S.Ct. 2160. The *Weltover* approach is somewhat general because the Supreme Court neither adopted nor repudiated a more specific analysis that has been offered by the Second Circuit. The Second Circuit's "legally significant act" test[4] requires express provision of payment in the U.S. *See* 504 U.S. at 617–19, 112 S.Ct. 2160 (analyzing direct effect but omitting any mention of the Second Circuit's "legally significant act" test); *see also Adler v. Federal Republic of Nigeria,* 107 F.3d 720, 727 n. 4 (9th Cir. 1997) (noting that the Supreme Court "did not expressly adopt the Second Circuit's

---

4. *See Weltover v. Republic of Argentina,* 941 F.2d 145, 152–53 (2d Cir.1991) (finding that effects are felt directly "where legally significant acts giving rise to the claim occurred" and noting another case in which the Second Circuit granted sovereign immunity when payment in the United States was not contractually obliged).

'legally significant test' in *Weltover* "). *Weltover* asks merely if payment is "supposed" to be made in the United States to determine whether an activity has had a direct effect. *See* 504 U.S. at 619, 112 S.Ct. 2160 ("Money that was supposed to have been delivered to a New York bank for deposit was not forthcoming.").

While other circuits have expressly adopted or rejected the "legally significant act" test,[5] the D.C. Circuit follows the same, more general approach set forth in *Weltover*. There is no direct effect unless payment was "supposed" to have been made in the United States. *See Goodman Holdings et al. v. Rafidain Bank*, 26 F.3d 1143, 1146 (D.C.Cir.1994) (finding no direct effect when "[n]either New York nor any other United States location was designated as the 'place of performance' where money was 'supposed' to have been paid"). After *Weltover*,[6] the D.C. Circuit has not required express designation of payment in the United States. *See Goodman Holdings*, 26 F.3d at 1146–47 (analyzing direct effects without employing or mentioning the "legally significant act" test); *id.* at 1147 (maintaining that the "direct effect" doctrine has no "prerequisite that the United States be contractually designated as the place of performance") (Wald, J., concurring). A recent district court case in this circuit also has followed this approach. *See Croesus*, 212 F.Supp.2d at 36.

As others have observed, the general "supposed to" test in *Weltover* and *Goodman Holdings* provides little practical guidance in determining whether a particular activity has a "direct effect" in the United States. *See United World Trade, Inc. v. Mangyshlakneft Oil Production Ass'n*, 33 F.3d 1232, 1237 (10th Cir.1994) (struggling to "identify objective standards that would aid in determining what does and does not qualify as a 'direct effect in the United States'" because the phrase seemed "hopelessly ambiguous when applied to any particular transaction"). As a matter of law, therefore, this court disagrees with defendants' assertion that "courts have ... held that unless payment is *expressly* required in the United States, there is no direct effect in the United States." Defs.' Reply Mem. In Support of Mot. to Dismiss Compl. ("Defs.' Reply") at 4 (emphasis added). Neither *Weltover* nor *Goodman Holdings* specifically requires express designation of the United States as the place of payment.

As a factual matter, however, in almost every case, in this circuit and others, involving the direct effect exception, the existence or absence of an expressly designated place of payment has been decisive. When a contract or note designates the United States for payment, courts have found a direct effect whether or not they adopt the "legally significant act" test. *See Weltover*, 504 U.S. at 617–19, 112 S.Ct. 2160 (finding direct effect when parties'

---

**5.** *See Adler*, 107 F.3d at 727 (accepting legally significant act test and noting that the Second, Eighth and Tenth Circuits seem to apply the test); *Voest–Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 894 (5th Cir. 1998) (rejecting the legally significant act test by interpreting *Weltover* as repudiating the test).

**6.** Before *Weltover*, the D.C. Circuit required express designation of payment in the United States to satisfy the "direct effects" requirement. *See Zedan v. Saudi Arabia*, 849 F.2d

1511, 1515 n. 2 (D.C.Cir.1988) (finding that the terms of a contract must "at the very least, have to specify a particular location in the United States, even perhaps the particular bank through which payment was to be made, before the breach could be said to cause a substantial, direct, and foreseeable effect in the United States"). Post-*Weltover* cases in the D.C. Circuit do not mention *Zedan*. *See Goodman Holdings*, 26 F.3d at 1146–47; *Croesus*, 212 F.Supp.2d at 35–37.

contract designated New York as place of payment); *Hanil Bank v. PT. Bank Negara Indonesia,* 148 F.3d 127, 132, 133 (2d Cir.1998) (upholding legally significant act test and finding direct effects where plaintiff was "entitled under the letter of credit to indicate how it would be reimbursed, and it designated payment to its bank account in New York"); *Voest–Alpine,* 142 F.3d at 894, 896 (rejecting legally significant act test but holding direct effect existed because plaintiff "expressly instructed the Bank of China to wire payment . . . in Houston"); *Adler,* 107 F.3d at 727, 729 (applying legally significant act test and finding direct effect where contract required plaintiff "to provide Nigeria with access to a non-Nigerian bank" and plaintiff in fact designated a New York bank for payment). And without an express designation of the United States as the place of payment, courts have refused to find a direct effect. *See Goodman Holdings,* 26 F.3d at 1146, 1147 (applying *Weltover* "supposed to" test but rejecting direct effect when contract did not specifically designate the United States as the place of performance); *United World Trade,* 33 F.3d at 1238 (employing legally significant act test to find no direct effect when the

contract designated performance exclusively in Europe, though payment was in U.S. dollars); *Croesus,* 212 F.Supp.2d at 36 (rejecting direct effect where plaintiffs conceded that express terms of Brazilian bonds gave holders "no right to designate a place of payment in the United States").

■ In this case, plaintiff does not show that payment was "supposed" to be made in the United States, expressly or not.[7] Plaintiff insists that the "express text of the promissory note requires payment in U.S. currency to a U.S. company *in the United States.*" Pl.'s Opp'n at 6 (emphasis added). The notes plainly require payment in U.S. dollars to a U.S. company but, on their face, do not designate *any* place of payment at all, let alone a particular bank or city in the United States. Plaintiff's argument that the "express text" of the notes require payment "in the United States" is simply wrong. Pl.'s Opp'n at 6.

■ By following the *Weltover* "supposed to" approach, the cases in this circuit have left open the possibility that a court could find a "direct effect" based upon a non-express agreement to pay in the United States.[8] However, this court is

---

7. The existence of an express designation of place of payment is a factual dispute between the parties. *See* Pl.'s Opp'n at 4–6 (asserting repeatedly that the promissory notes had designated payment "in the United States"); Defs' Mot. at 9 ("The Notes neither explicitly designate the United States as the place of performance nor give Global Index the option to designate a place of performance."). As a result, on this motion to dismiss for lack of jurisdiction, the court is obliged to resolve this factual dispute "in order to preserve the significance and benefit of a foreign sovereign's immunity from suit under the FSIA" instead of assuming the truth of the facts as alleged by plaintiff. *See Phoenix Consulting,* 216 F.3d at 41.

8. In *Goodman Holdings,* the D.C. Circuit found no direct effect because the defendant

"might have paid [plaintiff] from funds in United States banks but it might just as well have done so from accounts located outside of the United States, as it had apparently done before." 26 F.3d at 1146–47. This suggests that a consistent history of payment in the U.S. by defendant, though without express designation, might have satisfied the direct effect requirement. Similarly, in *Croesus,* the court granted defendants' motion to dismiss and found that the plaintiffs were not entitled to discovery on the issue of "direct effects" because they presented no facts suggesting that defendant had recently made payments in the United States on the bonds at issue. *See* 212 F.Supp.2d at 37. However, because in both cases the courts failed to find sufficient evidence that payment was "supposed" to be in the United States, it is murky what,

not tempted to be the first to find direct effects based on an implied or constructive agreement to pay in the U.S. Plaintiff points to no evidence, or even potential evidence to be uncovered in discovery, that tends to show that the parties had even impliedly agreed on payment in the United States. Plaintiff maintains that "it is difficult to fathom how an American company can expect payment for hundreds of millions dollars ... and the failure of the payment be considered anything other than" a direct effect in the U.S. Pl.'s Opp'n at 7. The fact that a U.S. citizen or entity suffers a loss does not suffice to prove a direct effect in the United States. *See Croesus*, 212 F.Supp.2d at 37 n. 5 (observing that even the most expansive interpretation of direct effect in *Voest–Alpine*, which rejected the legally significant act requirement, would likely not be satisfied by merely showing losses incurred by a U.S. plaintiff) (citing *Voest–Alpine*, 142 F.3d at 896 n. 11). Neither does the designation of payment in U.S. currency satisfy the direct effect requirement. *See United World Trade*, 33 F.3d at 1238 ("We cannot agree that ... efforts to convert the funds into U.S. dollars, even if this meant that at some point a United States bank had to be involved, was a direct effect."); *Falcon Investments*, 2001 WL 584346 at *6 (rejecting direct effect even when promissory notes were U.S. dollar-denominated). Finally, plaintiff does not argue that Tanzania has *ever* paid noteholders in the United States, much less made a consistent practice of paying in the U.S. *See* Pl.'s Opp'n at 6 (asking the court to disregard *Goodman Holdings* as precedent because "[t]he *Goodman* court looked to the past experience of the defendants relative to payment" whereas in this case "there is no past experience of payment"). Yet a history of payment in the U.S. seems

the only basis for finding a direct effect, not based on express agreement, that courts of this circuit have even considered. *See Goodman Holdings*, 26 F.3d at 1146–47; *Croesus*, 212 F.Supp.2d at 37.

Plaintiff's final hope is the fact that it expressly demanded, through counsel, payment in the United States after the promissory notes had matured. *See* Pl.'s Opp'n at 2 ("Plaintiff made a demand for payment to the defendants from the District of Columbia."); Pl.'s Ex. C (requesting that Tanzania remit payment on the promissory notes to plaintiff's counsel in Washington, D.C.). Courts have found a direct effect when the contract or instrument did not initially specify the place of payment but expressly allowed plaintiff to choose a location and plaintiff later chose the U.S. *See Weltover*, 504 U.S. at 609–10, 112 S.Ct. 2160 (finding direct effect where bonds allowed for payment in London, Frankfurt, Zurich or New York at the election of the creditor, and the creditor specified New York when payment came due); *Hanil Bank*, 148 F.3d at 132 (finding direct effects where plaintiff was "entitled under the letter of credit to indicate how it would be reimbursed, and it designated payment to its bank account in New York"); *Adler*, 107 F.3d at 727, 729 (finding direct effect where contract required plaintiff "to provide Nigeria with access to a non-Nigerian bank" and plaintiff in fact designated a New York bank for payment). However, there is no direct effect if the creditor-plaintiff chooses, unilaterally, the U.S. as a place of payment without any prior agreement with the debtor. *See Croesus*, 212 F.Supp.2d at 37 (rejecting direct effect when plaintiff demanded payment in the United States after bonds matured, nothing in bonds allowed such a designation, and there was no "firm basis to believe that such a designation would have been

short of an express designation, would fulfill the "direct effect" requirement.

accepted by Brazil and proper as a matter of Brazilian law"). If it were otherwise, any plaintiff (American or not) could, by unilaterally electing to accept payment in the U.S., frustrate otherwise valid contracts, even those with provisions specifying another country as the place of payment. Any plaintiff could also create FSIA jurisdiction over almost any contractual dispute, frustrating Congress's attempt to balance competing concerns—on the one hand, allowing U.S. citizens to recover against foreign states, but, on the other hand, imposing limits on the "direct effect" exception so that it does not open floodgates of litigation against foreign states. *United World Trade,* 33 F.3d at 1238 n. 4 (noting Congress's concern that the FSIA not turn U.S. courts into "small 'international courts of claims[,]' ... open ... to all comers to litigate any dispute which any private party might have with a foreign state anywhere in the world") (quoting *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983)).

This court finds that plaintiff fails to show that payment on the promissory notes was, either expressly or impliedly, "supposed" to be made in the United States and, as a result, that the "direct

effect" exemption to immunity does not apply.[9]

### CONCLUSION

Defendants are entitled to sovereign immunity under the FSIA, and there is no basis for an exception to immunity under the "direct effect" clause of § 1605(a)(2). Therefore, defendants' motion to dismiss is granted. An appropriate order accompanies this memorandum.

---

9. The court need not consider defendants' other grounds for dismissal, though it seems that defendants would also have prevailed on *forum non conveniens* grounds for dismissal.

In a very similar case decided in this district, the court granted dismissal for lack of subject matter jurisdiction under the FSIA. *See Croesus,* 212 F.Supp.2d at 33–37. That court, citing *Phoenix Consulting* as controlling authority, determined that it was required to further consider, and then dismiss, the case on the grounds of *forum non conveniens. Id.* at 37–42 (citing *Phoenix Consulting,* 216 F.3d at 40). However, this court finds that *Phoenix Consulting* compels an analysis of *forum non conveniens,* or other non-merits based grounds for dismissal such

as personal jurisdiction, only when a court has *denied* a motion to dismiss for lack of subject matter jurisdiction and made possible limited jurisdictional discovery. *See* 216 F.3d at 41 (finding that a foreign sovereign should not be burdened by even limited, jurisdictional discovery if a court can resolve case on another jurisdictional or other non-merit-based grounds for dismissal); *Papandreou,* 139 F.3d at 256 (holding that district court erred in allowing plaintiff to depose Greek officials, in order to resolve whether that court had subject matter jurisdiction under the FSIA commercial activity exception, when the court could have first considered whether the case could survive a motion to dismiss on grounds of *forum non conveniens* ).