Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued November 7, 2003      Decided December 16, 2003

No. 03-7016

I.T. CONSULTANTS, INC.,
APPELLEE

v.

THE ISLAMIC REPUBLIC OF PAKISTAN AND
KHAIR MOHAMED JUNEJO, MINISTER OF AGRICULTURE,
APPELLANTS

————

Appeal from the United States District Court
for the District of Columbia
(No. 01cv00241)

————

*Nicholas H. Cobbs* argued the cause and filed the briefs for appellants.

*Bruno A. Ristau* argued the cause and filed the brief for appellee.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: Randolph and Roberts, *Circuit Judges,* and Williams, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* Roberts.

Roberts, *Circuit Judge*: The Foreign Sovereign Immunities Act (FSIA) renders foreign states immune from the jurisdiction of the federal courts in many circumstances, but includes an exception for suits based on the foreign state's commercial activity, if that activity "causes a direct effect in the United States." 28 U.S.C. §§ 1604, 1605(a)(2). We hold in this case, in reliance on *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992), that a foreign sovereign's failure to make a contractually required deposit in a bank in the United States meets the statute's definition of a "direct effect," without regard to whether the parties considered the place of payment "important," "critical," or "integral." We therefore affirm the district court's conclusion that such a failure can provide the basis for subject matter jurisdiction over the Republic of Pakistan. We also affirm the court's ruling that it can assert personal jurisdiction over Pakistan, but conclude that the court improperly asserted personal jurisdiction over the Pakistani government official involved in the transaction, who was sued in his personal capacity.

# I.

At the base of this dispute is an October 1995 contract between appellee I.T. Consultants, Inc. (ITC) and appellant the Republic of Pakistan. ITC was to receive $10 million for manufacturing and installing geo-synthetic linings for a number of irrigation canals and watercourses in Pakistan. ITC began its work, but Pakistan terminated the contract in 1997, citing a shortage of funds. In September 1998, the parties agreed to rescind the contract; under their agreement, Pakistan was to pay ITC approximately eleven percent of the total contract price. No payment was ever made, however, and ITC sued Pakistan in the District Court for the District of Columbia in March 2000.

While that suit was pending, the parties held another round of settlement negotiations; the Economic Coordination Com-

mittee (ECC) of the Government of Pakistan appointed an ad hoc committee to negotiate with ITC. Those negotiations yielded a Memorandum of Understanding (MOU) between ITC and Pakistan's Ministry of Food, Agriculture, and Labor (MINFAL), signed on June 3, 2000. The MOU, contingent on ECC approval, provided that Pakistan would pay ITC compensation (in a mixture of U.S. and Pakistani currency: $1,143,965 and 10,535,000 rupees) to extinguish all of ITC's claims under the contract and secure the dismissal of the pending lawsuit. Memorandum of Understanding Between I.T. Consultants and MINFAL (JA 16A). The MOU was silent on the place of payment, but in a letter three weeks later, ITC requested that the dollar-denominated portion of the settlement (some eighty-seven percent of the total value) be sent to an account at Riggs Bank in Alexandria, Virginia, and the rupees to an account at a bank in Rawalpindi, Pakistan. Letter from Farrakh A. Shah, President, ITC, to Dr. Zafar Altaf, Secretary, MINFAL (June 24, 2000), at 2 (JA 19). The record contains a copy of this letter allegedly returned to ITC, bearing the signature of Dr. Zafar Altaf, the then-Secretary of MINFAL, and a handwritten notation — the word "Okay" — in the margin next to the Riggs Bank information. *Id.*

The ECC approved the MOU on September 4, 2000, but on October 26, 2000, there was a leadership change at MINFAL and Khair Mohamed Junejo became Secretary. Junejo ordered the payment to ITC stopped, explaining later that "[t]he payment was temporarily stopped with a view to referring the case back to [the] ECC for reconsideration with full facts." Def. Answers to First Set of Interrogs. at 2 (JA 110). At around the same time — the exact order of these events is unclear — Junejo learned of a development in ITC's suit in Washington: the district court had dismissed the suit without prejudice on September 28, 2000, citing improper service of process on Pakistan. *See I.T. Consultants, Inc. v. Islamic Republic of Pakistan*, No. 00–0503 (D.D.C. Sept. 28, 2000). Junejo concluded that Pakistan had "won" the lawsuit, but admitted that at the time he did not understand the meaning of the phrase "without prejudice." On February 20, 2001, the

ECC ratified the hold on the payment to ITC and instructed MINFAL to examine certain legal issues (including governing law, court jurisdiction, and arbitration) in relation to the original contract with ITC. Decision of the ECC, Case No. ECC–22/02/2001 (Feb. 20, 2001) (JA 133).

ITC filed the present action in the District Court for the District of Columbia on January 31, 2001, naming Pakistan and Junejo "in his personal capacity" as defendants. The claim against Pakistan was for breach of the MOU; that against Junejo was for tortious interference with the MOU. Pakistan and Junejo moved to dismiss on grounds of, *inter alia*, lack of subject matter jurisdiction and lack of personal jurisdiction. The district court denied the motion in an order on January 3, 2003, and subsequently issued an opinion. *See I.T. Consultants, Inc. v. Islamic Republic of Pakistan*, No. 01–0241 (D.D.C. Feb. 12, 2003) (*I.T. Consultants II*). The court first considered subject matter jurisdiction, concluding that "if [ITC] can prove that payment was to be made at [ITC's] bank in Virginia in U.S. currency and that Pakistan breached that obligation, these facts establish a direct effect" and confer subject matter jurisdiction under Section 1605(a)(2) of the FSIA. *Id.*, op. at 6 (JA 160). Turning to personal jurisdiction, the court determined that personal jurisdiction over Pakistan was proper under 28 U.S.C. § 1330(b), which provides that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject matter] jurisdiction" under the FSIA, so long as service of process is proper. The court also found that it had personal jurisdiction over Junejo: because he was alleged to have caused the breach of Pakistan's obligation to transfer U.S. dollars to the Riggs Bank in Virginia, the court reasoned, he should reasonably have expected to be haled into court here. *I.T. Consultants II*, op. at 12 (JA 166) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)).[1] This interlocutory appeal followed.

---

[1] The district court also rejected the defendants' other two proposed grounds for dismissal — official immunity for Junejo under the FSIA, and forum non conveniens. *I.T. Consultants II*, op. at

**II.**

In ruling on the motion to dismiss on grounds of subject matter and personal jurisdiction, the district court accepted the allegations of the complaint as true. *I.T. Consultants II*, op. at 4 (JA 158). Pakistan and Junejo of course dispute these allegations — including allegations arguably pertinent to the question of sovereign immunity — and could have pressed the district court to resolve any relevant factual disputes before ruling on sovereign immunity. *See Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (if defendant challenges factual basis for court's jurisdiction in FSIA case, court should "go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss"). Instead, Pakistan sought a ruling on its immunity on the basis of the allegations in the complaint. *See* Reply Mem. in Supp. of Def. Mot. to Dismiss, at 1 (JA 83) ("Assuming the truth of all of plaintiff's contentions, as the court must"). Under such circumstances, the district court properly proceeded to decision on the basis of those allegations. *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 91 (D.C. Cir. 2002).

Although the district court's interlocutory ruling declining to dismiss on grounds of Pakistan's sovereign immunity is thus not a conclusive determination of the immunity question, but instead subject to change in light of further development of the facts, we nonetheless have appellate jurisdiction to review it. *See id.* ("[A]n FSIA defendant can take an immediate appeal if the District Court rejects its argument that the facts alleged in the plaintiff's complaint do not bring the case within one of the statute's immunity exceptions."); *see also Behrens v. Pelletier*, 516 U.S. 299, 307 (1996) ("[A]n order rejecting the defense of qualified immunity at either the dismissal stage or the summary judgment stage is a 'final' judgment subject to immediate appeal."). We also have

13–16 (JA 167–70). ITC does not challenge the latter ruling in this appeal, and we do not reach the former in light of our holding that the district court lacks personal jurisdiction over Junejo.

jurisdiction over Junejo's appeal. *See Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1025–27 (D.C. Cir. 1997).

## A.   Subject Matter Jurisdiction Under the FSIA

One of the key allegations taken as true is that "[p]ursuant to the MOU, eighty seven percent (87%) of the payment (U.S. $1.144 million) was to be made in United States currency by [Pakistan] into [ITC's] account at the Riggs Bank in Alexandria, Virginia."   Compl. ¶ 6 (JA 9).   In particular, "[t]he modality of payment was proposed by [ITC] in a letter dated June 24, 2000, to the Chairman of the negotiating committee who received the letter and approved the method of payment."   *Id.*   Pakistan believes that even when these facts are assumed, Pakistan's failure to make the payment does not constitute a direct effect that would support jurisdiction under the FSIA.   The question thus becomes whether this case is distinguishable from *Weltover*, the Supreme Court's leading case on the FSIA's direct effect requirement.

In *Weltover*, the Argentine government had issued bonds (denominated in U.S. dollars) that permitted the bondholder to specify one of four cities — London, Frankfurt, Zurich, or New York — as the place where payment was to be made when the bonds matured.   On the maturity date, Argentina was unable to meet its payment obligations, and attempted to reschedule the payments unilaterally.   Several bondholders balked at this and demanded full payment, naming New York as the place of payment.   504 U.S. at 609–10.   Argentina failed to make the payments and the bondholders sued, asserting that subject matter jurisdiction existed under the FSIA because Argentina's failure to pay had a direct effect in the United States.   The Supreme Court agreed, noting that "[b]ecause New York was . . . the place of performance for Argentina's ultimate contractual obligations, the rescheduling of those obligations necessarily had a 'direct effect' in the United States: *Money that was supposed to have been delivered to a New York bank for deposit was not forthcoming.*" *Id.* at 619 (emphasis added).

Pakistan argues that the instant case differs from *Weltover* in two principal respects — in *Weltover* the provision for payment in the United States was "part of a written contract between the parties," and the place of payment was critical to the underlying agreement. Appellants Br. at 11. Pakistan suggests that a case more directly on point is *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143 (D.C. Cir. 1994), in which this court distinguished *Weltover* and held that an Iraqi government bank's failure to honor certain letters of credit it had issued did not support subject matter jurisdiction under the FSIA. The Iraqi bank in *Goodman Holdings* did use some United States banks to make payments on other letters of credit, but we concluded that the failure to honor the particular letters at issue in the case did not have a direct effect in the United States because "[n]either New York nor any other United States location was designated as the 'place of performance' where money was 'supposed' to have been paid." *Id.* at 1146.

These attempts to distinguish this case from *Weltover* are unpersuasive. First, Pakistan's attempt to direct our attention to the presence or absence of a payment term in the "written contract between the parties" is inconsistent with Pakistan's recognition that we should accept the allegations of the complaint — including the allegation that payment was to be made in Virginia "[p]ursuant to the MOU" — as true. *See* Appellants Br. at 9. For purposes of its motion to dismiss, Pakistan has elected not to challenge what this court at oral argument described as "the assumption the district court was operating on — that there was a contract obliging Pakistan to pay the bank in Virginia."[2] Having permitted that assump-

---

[2] The district court treated the allegation that payment was to be made in Virginia as true for purposes of the motion to dismiss. *See I.T. Consultants II*, op. at 9 (JA 163) ("Pakistan agreed to make payment to plaintiff in a Virginia bank account"); *id.* at 11 (JA 165) ("[T]he foreign sovereign in this case agreed to ... deposit the money in plaintiff's bank located in the United States."). *Accord Hanil Bank v. Pt. Bank Negara Indonesia*, 148 F.3d 127, 132, 134 (2d Cir. 1998) (affirming denial of motion to dismiss on sovereign

tion, it is no use for Pakistan to quibble over how that payment obligation arose, or whether it arose by means different from those in *Weltover*, where the payee's specification of place of payment was also not contemporaneous with the signing of the underlying agreement giving rise to the obligation to pay.

Second, we reject the suggestion that the degree of importance the parties attach to the place of payment is relevant to the question whether a failure to pay has a direct effect. Neither *Weltover* nor the subsequent case law of this circuit suggests that only "important" contractual terms may give rise to a direct effect. Any attempt to rank the various terms of a contract in order of their importance to the parties would require the court to delve deeply into the facts before making a threshold finding of jurisdiction — an undesirable prospect — and would be ultimately standardless. For example, under Pakistan's reasoning, a contract that specified New York as the place of payment would not create a direct effect if the parties did not consider that term important, even if the amount to be paid was $100 billion. And conversely, if the parties to a different contract believed that payment in New York was extremely important, Pakistan's reasoning would support a finding of a direct effect even if the amount due under the contract was merely $1000. And what are we to do if we determine that place of payment was important for one party, but not the other? Pakistan's proposed analysis founders because it bears no relation to the statutory term it purports to illumine — "direct effect."

The facts of this case differ in significant respects from those on which this court relied in *Goodman Holdings* when it found *Weltover* distinguishable. In *Goodman Holdings*, the nexus with bank accounts in the United States was the fact that the Iraqi sovereign defendant *might* have used those accounts to make the payments due to its creditor (an Irish corporation), as it had sometimes done before. The "immediate consequence" that *Weltover* requires was not present, the

immunity grounds although defendant denied that it expressly agreed to New York as place of payment).

court found, because the payments could have been made from the defendant's other accounts — outside the United States — and there was no requirement that the payments be made into an account in New York or anywhere else in the United States. *Goodman Holdings*, 26 F.3d at 1146–47. In short, the transaction at issue in *Goodman Holdings* could have occurred without the involvement of a United States bank at any stage. Similarly, in *United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n*, 33 F.3d 1232 (10th Cir. 1994), the parties' contract provided for payment in U.S. dollars to a bank in Paris; the Tenth Circuit found that even though a bank in the United States might have been involved in converting the payment to U.S. currency, that aspect of the transaction was "simply too attenuated from the defendants' actions to be considered a 'direct effect.'" *Id.* at 1238. In this case, by contrast — assuming, as we do at this stage, that the agreement between the parties *did* provide for payment in Virginia — the involvement of a U.S. bank was immediate and unavoidable. We conclude that Pakistan's failure to meet its payment obligation under such a contract would qualify as an act that "causes a direct effect in the United States" under the FSIA. 28 U.S.C. § 1605(a)(2).

## B. Personal Jurisdiction over Pakistan

Once subject matter jurisdiction exists under the FSIA, personal jurisdiction over a foreign state defendant is established. As a statutory matter, 28 U.S.C. § 1330(b) provides that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which" subject matter jurisdiction exists under the FSIA, so long as the defendant was properly served. *See Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548 n.11 (D.C. Cir. 1987) (R. B. Ginsburg, J.) (in FSIA cases, "subject matter jurisdiction plus service of process equals personal jurisdiction") (internal quotation marks and citation omitted). And as a constitutional matter, there is no constitutional matter. The law of this circuit, under *Price*, is that "foreign states are not 'persons' protected by the Fifth Amendment." 294 F.3d at 96. We therefore do not need to examine whether Pakistan has the minimum contacts that would otherwise be a prerequisite for

personal jurisdiction under the Due Process Clause of the Fifth Amendment.

## C. Personal Jurisdiction over Junejo

Personal jurisdiction over Junejo is not as easy. Junejo is quite obviously a "person" entitled to the protections of the Due Process Clause, so the traditional minimum contacts requirement applies. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In addition, for personal jurisdiction in the District Court for the District of Columbia to be proper, Junejo must be covered by the District of Columbia's long-arm statute. *See United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).

ITC conceded below that personal jurisdiction over Junejo does not lie under the District's long-arm statute, D.C. Code § 13–423(a)(4). *See* Pl. Supplemental Br. at 11 n.5 (JA 106) ("The District of Columbia long-arm statute . . . cannot serve as a predicate[ ] for personal jurisdiction over Mr. Junejo in this case."). ITC argued instead that Junejo was an "agency or instrumentality" of Pakistan, and that the FSIA itself thus provided the basis for personal jurisdiction over him, just as it automatically provides personal jurisdiction "over a foreign state." *Id.* at 11 (JA 106) (citing 28 U.S.C. §§ 1330(b), 1603(a)). The district court properly rejected this argument as inconsistent with the fundamental precept of Anglo–American jurisprudence that you cannot have your cake and eat it, too: ITC cannot simultaneously sue Junejo in his personal capacity and treat him as "a foreign state" for purposes of personal jurisdiction. *See I.T. Consultants II*, op. at 10 (JA 164); *see also Jungquist*, 115 F.3d at 1027 ("Individuals acting *in their official capacities* are considered 'agenc[ies] or instrumentalit[ies] of a foreign state' " (alterations in original) (emphasis added)). That conclusion — coupled with ITC's concession that the District's long-arm statute does not reach Junejo — should have been dispositive on the question of personal jurisdiction over Junejo in the District Court for the District of Columbia.

The district court, however, considered the constitutional question of whether Junejo "has sufficient 'minimum contacts

with [this forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice,'" *I.T. Consultants II*, op. at 11 (JA 165) (quoting *International Shoe*, 326 U.S. at 316) (other quotation marks omitted; bracketed language added by district court), assuming that the District's long-arm statute allows the exercise of personal jurisdiction to the full extent permitted by the Constitution. *See id.* at 12 n.5 (JA 166); *but see GTE New Media Servs. Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) ("The drafters of [subsection (a)(4) of Section 13–423] apparently intended that [it] would not occupy all of the constitutionally available space.") (quotation omitted). The court concluded that the "minimum contacts" test was satisfied, and that it could exercise personal jurisdiction over Junejo, because of the allegation that Junejo took steps that "had the direct effect in the United States of Pakistan's breaching its obligation to transfer U.S. dollars to the Riggs Bank in Virginia. . . ." *I.T. Consultants II*, op. at 12 (JA 166). But that allegation says nothing about Junejo's contacts with the District of Columbia, as opposed to the Eastern District of Virginia. Nothing in the record supports the exercise of personal jurisdiction over Junejo by the court below.[3]

### III.

For the foregoing reasons, we affirm the district court's denial of the motion to dismiss for lack of subject matter and personal jurisdiction with respect to Pakistan. We reverse the denial of the motion to dismiss for lack of personal jurisdiction over Junejo. The case is remanded for further proceedings.

---

[3] Indeed, counsel for ITC all but abandoned ITC's claims against Junejo at oral argument before this court, announcing at the outset that "I will not spend my precious time on Junejo; Junejo has long ago been canned, and I have no idea where he is."