# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 12, 2017        Decided June 1, 2018

No. 17-7004

MADY MARIELUISE SCHUBARTH,
APPELLANT

v.

FEDERAL REPUBLIC OF GERMANY AND BVVG
BODENVERWERTUNGS- UND -VERWALTUNGS GMBH,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-02140)

*Mark N. Bravin* argued the cause for appellant. With him
on the briefs was *Alexandra A.K. Meise*.

*Jeffrey Harris* argued the cause for appellees. With him
on the brief was *Walter E. Diercks*.

Before: GRIFFITH, KAVANAUGH, and WILKINS, *Circuit
Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: This action arises from Mady
Marieluise Schubarth's pursuit of compensation for land ("the

Estate") allegedly seized from her family at the beginning of the Cold War. After achieving a partial award through restitution processes in the Federal Republic of Germany ("Germany"), where the Estate is located, Schubarth pressed her claim here. Her complaint asserts that the denial of full compensation for the Estate violated the bilateral Treaty of Friendship, Commerce and Navigation between the United States and the Federal Republic of Germany, Oct. 29, 1954, 7 U.S.T. 1839, T.I.A.S. No. 3593 (hereinafter the "FCN Treaty"), both independently and as incorporated into German domestic law.

The question before us is whether U.S. courts may exercise subject matter jurisdiction over this case under the Foreign Sovereign Immunities Act ("FSIA"). The District Court concluded Schubarth's complaint did not sufficiently plead that either defendant, Germany itself or the German state-owned corporation that allegedly markets and manages the Estate ("BVVG"), was engaged in "commercial activity in the United States" under the FSIA's expropriation exception. 28 U.S.C. § 1605(a)(3). For the same reason, the District Court held that Germany had not waived its sovereign immunity when enacting the FCN Treaty.

We affirm as to Germany and reverse as to BVVG. Following our holding in *de Csepel v. Republic of Hungary*, a foreign state is immune to claims for the expropriation of property not present in the United States, and Schubarth does not dispute that the Estate is located abroad or that Germany is the foreign state itself. *See* 859 F.3d 1094, 1107 (D.C. Cir. 2017). Therefore, the District Court properly concluded U.S. courts cannot exercise subject matter jurisdiction over Schubarth's claims against Germany pursuant to the FSIA's expropriation exception.

BVVG is a different matter. Although the question is close, reading the complaint's factual allegations together and construing all reasonable inferences in Schubarth's favor, it is plausible that BVVG "is engaged in a commercial activity in the United States," including ongoing sales and marketing of previously expropriated land such as the Estate. 28 U.S.C. § 1605(a)(3). We need not reach whether, in a different case, allegations of marketing alone would constitute "commercial activity" under the FSIA. We leave for the District Court to consider in the first instance whether BVVG is properly considered an "agency or instrumentality" of Germany rather than the state itself.

## I.

### A.

The following facts are taken from the complaint and assumed true on review of Defendants' motion to dismiss. *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 93 (D.C. Cir. 2002). Schubarth is a U.S. citizen and California resident who alleges she inherited over 500 acres of German agricultural land from her parents in 1973. At that time, the Estate was located in the German Democratic Republic ("East Germany"), a satellite state of the Soviet Union divided from the then-Federal Republic of Germany ("West Germany") at the end of World War II. Beginning in 1945, the Soviet occupying authorities and, subsequently, the East German government expropriated or collectivized most

privately held real property in East Germany, including the Estate.

In 1956, the United States and West Germany entered into the FCN Treaty, which in relevant part provides:

> Property of nationals and companies of either Party shall receive the most constant protection and security within the territories of the other Party. . . . Property of nationals and companies of either Party shall not be taken within the territories of the other Party, except for the public benefit and in accordance with due process of law, nor shall it be taken without just compensation. Such compensation shall represent the equivalent of the property taken and shall be made in an effectively realizable form and without unnecessary delay. Adequate provision shall have been made at latest by the time of the taking for the determination and the giving of the compensation.

FCN Treaty, art. V, ¶¶ 1, 4. According to the complaint, a 1957 German federal court decision held that the FCN Treaty was incorporated into German domestic law and required a U.S. national to be compensated with no less than fair market value for property taken by the West German government. J.A. 6-7. Schubarth became a U.S. citizen, and thereby lost her previous German citizenship, in 1963.

Following the 1990 reunification of East and West Germany, the German government faced the challenges of re-privatizing East German property and of resolving competing claims to expropriated property from prior owners and current occupants. It established the Treuhandanstalt (the "Trust

Agency") to oversee conversion of the former East German communist system into a market economy, including by selling state-owned enterprises and property. The Trust Agency maintained an office in New York City to market and sell expropriated properties, including the Estate, in the United States and around the world. J.A. 5. Pursuant to its marketing efforts, the Trust Agency made $1.65 billion in sales in the United States. *Id.*

The Trust Agency closed in 1994. Its responsibilities were transferred to three successor agencies, including defendant BVVG, which took on the Trust Agency's role of managing, marketing, and selling expropriated agricultural and forest lands. J.A. 2, 5. In addition, after the Trust Agency closed its New York office, it "pursued marketing efforts over the Internet." J.A. 5. "Portions of the [] Estate were sold by the Trust Agency, and later by the BVVG as successor to the Trust Agency, to private investors in Germany and elsewhere." *Id.* The complaint describes BVVG's role as successor to the Trust Agency as follows:

> The BVVG is a German state-owned entity founded by statute in 1991. It is responsible, inter alia, for the management, marketing and sale of expropriated properties located in the former [East Germany]. Specifically, the BVVG manages and privatizes agricultural and forest lands seized by East Germany in the German state[] of . . . Thuringia. . . . The BVVG provides information about the expropriated properties it controls to potential buyers, including lease and purchase prices, and other commercial terms. Its predecessor, the Trust Agency, carried out these commercial activities, inter alia, with an office and staff in the United

> States. Subsequently, the BVVG has continued these activities by posting links to such information on its website.

J.A. 2-3. According to the complaint, "[w]hen the BVVG succeeded to the Trust Agency's responsibilities concerning agricultural and forest lands in the early to mid-1990s, it adopted and continued the Trust Agency's marketing efforts. Those marketing efforts . . . continue to the present day." J.A. 5. From 1992 through 2008, "BVVG and its predecessor, the Trust Agency, collected at least €3.5 billion from successful land marketing and sales." J.A. 3.

In 1991, Schubarth applied to the German State Agency for Open Property Issues in the State of Thuringia (the "Thuringia State Agency"), where the Estate was located, for restitution of the property. In 1992, the Thuringia State Agency granted restitution of a house on the Estate and some surrounding land, but denied Schubarth's claim as to the remainder of the Estate. The complaint claims this "constituted an expropriation of her property by the new, unified Federal Republic of Germany," and that Schubarth's American citizenship entitled her to compensation "represent[ing] the equivalent of the property taken" under the FCN Treaty. J.A. 5-6.

In 1994, Germany enacted the "Compensation Act," providing a process by which owners of expropriated property whose restitution claims had been denied could apply for some additional compensation. Schubarth so applied in 1995 and claimed she was entitled to 100% of the Estate's fair market value as of the date of the alleged expropriation. Her application argued the FCN Treaty had been adopted as domestic German law and, therefore, entitled her to full compensation for the entire value of the Estate. The

application remained pending before the Thuringia State Agency, without a decision, for nineteen years.

Almost two decades after Schubarth submitted her application, in February 2014, the Thuringia State Agency issued a proposed decision under the Compensation Act recognizing Schubarth as owner of at least some of the Estate, acknowledging that the Estate had been expropriated, and proposing a €35,279 compensation award.  J.A. 7.  Schubarth believed this was far less than the amount to which she was entitled.  In November 2014, Schubarth requested that the Thuringia State Agency apply to Germany's Ministry of Finance for an opinion on the applicability of the FCN Treaty to her claim.  Several days later, the Thuringia State Agency issued a final administrative decision affirming its February 2014 proposed decision without discussing the FCN Treaty. According to the complaint, this final decision "admits, among other things, that Mrs. Schubarth was the owner of the [] Estate, that the [] Estate was expropriated, and that Mrs. Schubarth is entitled to compensation payable by Germany."  J.A. 8.

**B.**

Schubarth filed this action in December 2014, approximately one month after the Thuringia State Agency issued its final administrative decision.  Defendants moved to dismiss for want of subject matter jurisdiction under the FSIA and for failure to state a claim under Rule 12(b)(6).[1]

---

[1] Defendants also moved to dismiss for want of personal jurisdiction.  Under the FSIA, personal jurisdiction exists where (1) subject matter jurisdiction has been satisfied, and (2) proper service has been effected.  28 U.S.C. § 1330(b); *I.T. Consultants, Inc. v. Republic of Pakistan*, 351 F.3d 1184, 1191 (D.C. Cir. 2003).  Defendants concede they were properly served; thus, personal jurisdiction turns on the satisfaction of an FSIA exception.

Defendants argued, among other things, that Schubarth had not pleaded facts sufficient to show BVVG was engaged in "commercial activity in the United States" under 28 U.S.C. § 1605(a)(3).

The District Court granted Defendants' motion to dismiss for want of subject matter jurisdiction without conducting jurisdictional discovery.[2] *Schubarth v. Federal Republic of Germany*, 220 F. Supp. 3d 111 (D.D.C. 2016). The court found Schubarth's allegation that BVVG's predecessor, the Trust Agency, maintained an office in New York in the early 1990s insufficient because courts "have looked for evidence of recent or ongoing transactions" in the United States to support jurisdiction under the FSIA. *Id.* at 115. The District Court then considered Schubarth's allegations that the Trust Agency "'pursued marketing efforts over the Internet,'" "that BVVG later 'adopted and continued those marketing efforts . . . to the present day,'" and that "[t]hose efforts include 'posting links to . . . information [about expropriated properties available for lease or sale] on its website.'" *Id.* (second alteration in original). The District Court concluded these facts did not sufficiently "link[] BVVG's commercial activity to the United States" because Schubarth had not alleged "at least one alleged commercial transaction or solicitation that was indisputably tied to the United States." *Id.* at 115-16. Therefore, the District Court held, it did not have jurisdiction because Schubarth had

---

[2] Schubarth did not request jurisdictional discovery prior to the District Court's order granting Defendants' motion to dismiss. Schubarth included a request for jurisdictional discovery in her motion for reconsideration, which the District Court denied because "such discovery is warranted only where a 'defendant has . . . challenged the factual basis of the court's jurisdiction.'" Mem. Op. & Order Denying Motion for Reconsideration, ECF No. 41, at 2-3 (quoting *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)) (alterations omitted).

not pleaded sufficient facts to show "commercial activity" under § 1605(a)(3).[3]  Schubarth timely appealed.

## III.

### A.

This Court reviews *de novo* a district court's dismissal for lack of subject matter jurisdiction under the FSIA.  *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1169 (D.C. Cir. 1994).  "When reviewing a plaintiff's unchallenged factual allegations to determine whether they are sufficient to deprive a . . . defendant of sovereign immunity, we assume those allegations to be true."  *Price*, 294 F.3d at 93.  "Thus, where the defendant contests only the legal sufficiency of plaintiff's jurisdictional claims, the standard is similar to that of Rule 12(b)(6), under which dismissal is warranted if no plausible inferences can be drawn from the facts alleged that, if proven,

---

[3] For the same reason, the opinion below concluded Schubarth did not meet the requirements for the FSIA waiver exception, which Schubarth argued was applicable under the FCN Treaty's provision that no agency or instrumentality of either country "engage[d] in commercial, industrial, shipping or other business activities within the territories" of the other may claim "immunity [from] suit, execution of judgment or other liability to which privately owned and controlled enterprises are subject therein."  FCN Treaty, art. XVIII, ¶ 2; *see also* 28 U.S.C. § 1605(a)(1) (withdrawing sovereign immunity in any case "in which the foreign state has waived its immunity either explicitly or by implication").  In addition, because the District Court concluded the complaint did not sufficiently plead commercial activity in the United States, it did not reach Defendants' argument that BVVG also qualifies as a "foreign state" due to BVVG's role in privatizing property in post-communist East Germany.  We leave both issues to the District Court to consider in the first instance if necessary.

would provide grounds for relief." *Id.* A "defendant bears the burden of proving" sovereign immunity, including that "the plaintiff's allegations do not bring its case within a statutory exemption to immunity." *Phoenix Consulting*, 216 F.3d at 40.

**B.**

Federal courts may exercise jurisdiction over claims against a foreign state or its agencies and instrumentalities only pursuant to the FSIA, which establishes a default rule of foreign sovereign immunity. 28 U.S.C. § 1604; *Princz,* 26 F.3d at 105. "The Supreme Court has consistently held that the FSIA's enumerated exceptions provide the only path to jurisdiction over foreign states in U.S. courts." *Belhas v. Ya'alon*, 515 F.3d 1279, 1283 (D.C. Cir. 2008).

Schubarth asserts her claim falls within the FSIA's "expropriation exception," which provides:

> (a)   A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case –
>
> . . .
>
>   (3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state

and that agency or instrumentality is engaged in
a commercial activity in the United States.

28 U.S.C. § 1605(a)(3). "For the exception to apply, therefore, the court must find that: (1) rights in property are at issue; (2) those rights were taken in violation of international law; and (3) a jurisdictional nexus exists between the expropriation and the United States." *Nemariam v. Federal Democratic Republic of Ethiopia*, 491 F.3d 470, 475 (D.C. Cir. 2007) (quotation marks and alteration omitted). The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d).

A plaintiff must make more than a nonfrivolous showing that FSIA's expropriation exception applies. *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1316 (2017). However, "where jurisdictional questions turn upon further factual development, the trial judge may take evidence and resolve relevant factual disputes." *Id.*

**IV.**

**A.**

We conclude Schubarth's factual allegations of BVVG's commercial activity in the United States are sufficient to survive a motion to dismiss at the pleading stage. The District Court observed that "[c]ourts assessing the FSIA's commercial activity requirement [] have looked for evidence of recent or ongoing transactions." *Schubarth*, 220 F. Supp. 3d at 115 (citing *Agudas Chasidei Chabad v. Russian Federation*, 528 F.3d 934, 948 (D.C. Cir. 2008); *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 693 (7th Cir. 2012); *Altmann v. Republic of Austria*, 317 F.3d 954, 961, 969 & n.5 (9th Cir. 2002)). From

these precedents the District Court derived a requirement that a defendant's commercial activity must be ongoing, or must have ceased only recently, at the time a complaint is filed.[4] We do not decide whether the FSIA's expropriation exception always requires contemporaneous or recent commercial activity, nor do we delve into how recent such activity must be, because we conclude Schubarth adequately pleaded ongoing sales and marketing of expropriated land by BVVG in the United States as of 2014, when she filed her complaint.

The District Court reached a different conclusion after considering the allegation that the Trust Agency "maintained a New York office 'in the early 1990s' to market and sell properties, and that those marketing efforts resulted in a large volume of sales." *Schubarth*, 220 F. Supp. 3d at 115. This was insufficient to plead ongoing commercial activity by BVVG, the District Court reasoned, because "the activities of a predecessor entity occurring roughly two decades prior to the filing of the instant complaint do not reveal whether BVVG is engaged presently – or has been engaged recently – in commercial activity in the United States." *Id.* (emphasis and quotation marks omitted).

True, the Trust Agency closed its New York office sometime before 1994, twenty years before the filing of this action.[5] But a plaintiff need not show sufficient "commercial

---

[4] This interpretation is supported by the FSIA's plain text, which employs the present tense: Sovereign immunity may be abrogated if the "agency or instrumentality *is* engaged in a commercial activity in the United States." 28 U.S.C. § 1605(a)(3) (emphasis added); *see United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes.").

[5] We note that nineteen of those years passed while Schubarth awaited a decision from the Thuringia State Agency on her restitution application.

activity in the United States" independently with each fact she alleges. The Trust Agency's operation of a New York office in the early 1990s must be evaluated in the context of the complaint's other allegations, including that "[w]hen the BVVG succeeded to the Trust Agency's responsibilities concerning agricultural and forest lands in the early to mid-1990s, it adopted and continued the Trust Agency's marketing efforts," which "continue to the present day." J.A. 5. This must also be read together with the allegation that the Trust Agency made $1.65 billion in U.S. sales, which strengthens Schubarth's allegation that the Trust Agency's successor would continue these profitable land sales once it took over the Trust Agency's responsibilities. With all of these facts taken as true at this stage, it is reasonable to infer that the successor

---

There is no indication that Schubarth did not diligently pursue and exhaust her remedies in Germany, or that she bears any responsibility for the agency's delay that contributed to the two-decade temporal distance between the New York office's closure and the filing of this suit. Schubarth therefore argues that the District Court's interpretation of § 1605(a)(3) as requiring commercial activity contemporaneous to the filing of suit in this country, rather than contemporaneous with the alleged expropriation, would work inequity and injustice in this case. Because Schubarth's complaint adequately alleges continuing commercial activity by BVVG in the United States through the filing of her complaint, we need not consider whether a foreign sovereign may successfully defeat jurisdiction under the expropriation exception by delaying exhaustion of a plaintiff's remedies under its own laws. *Cf. Sosa v. Alvarez-Machain*, 542 U.S. 692, 733 n.21 (2004) (*Amicus curiae* argues "that before asserting a claim in a foreign forum, the claimant must have exhausted any remedies available in the domestic legal system. . . . We would certainly consider [an exhaustion] requirement in an appropriate case."); *Republic of Austria v. Altmann*, 541 U.S. 677, 714 (2004) ("[A] plaintiff may have to show an absence of remedies in the foreign country sufficient to compensate for any taking [to invoke the FSIA's expropriation exception].") (Breyer, J., concurring).

to such a robust sales operation would continue marketing and selling to U.S. buyers.

The complaint also alleges that "[b]etween 1992 and 2008, BVVG and its predecessor, the Trust Agency, collected at least €3.5 billion from successful land marketing and sales," J.A. 3; and that agencies or instrumentalities of Germany "have engaged, and continue to engage, in . . . the sales marketing of Mrs. Schubarth's estate to potential buyers in the United States," J.A. 1. Because defendants chose not to dispute these facts when moving to dismiss, they must be assumed true and all reasonable inferences must be drawn in Schubarth's favor. *Price*, 294 F.3d at 93. If BVVG made billions in land sales through 2008, and if BVVG's efforts included "sales marketing" of the Estate itself "in the United States," J.A.1, it is at least *plausible* that, as Schubarth alleges, Trust Agency's sales and marketing efforts in the United States "continue through the present day" via its successor, BVVG. *See Simon v. Republic of Hungary*, 812 F.3d 127, 147 (D.C. Cir. 2016) (A defendant is "entitled to a dismissal for failure to establish jurisdiction only if 'no plausible inferences can be drawn from the facts alleged that, if proven,' would satisfy the expropriation exception's nexus requirements." (quoting *Price*, 294 F.3d at 93)). We therefore conclude that Schubarth has adequately alleged ongoing commercial activity in the United States on these undisputed facts.

Schubarth bolsters her argument in support of our jurisdiction with allegations that "the Trust Agency pursued marketing efforts over the Internet," and that BVVG "adopted and continued [those] marketing efforts . . . to the present day'" by "posting links to . . . information [about expropriated properties available for lease or sale] on its website." J.A. 5, 3. If we had to decide whether online marketing in English, alone, constitutes commercial activity in the United States, we might

be inclined to agree with the District Court. But Schubarth's complaint does not present this question. Like the allegations regarding the Trust Agency's New York office, the allegations of BVVG's online marketing are pleaded in the context of the rest of the complaint. Again, we must draw reasonable inferences in Schubarth's favor on this motion to dismiss, where the complaint's factual allegations – including that BVVG was marketing and selling expropriated land in the United States after it succeeded to the Trust Agency's responsibilities – are undisputed. Thus, the allegation that BVVG continued the Trust Agency's online marketing reasonably explains how BVVG continued the Trust Agency's efforts to sell expropriated land in this country after closing the New York office.

We emphasize that our decision applies the standard of review on a motion to dismiss under the FSIA where Defendants have not disputed any facts in the complaint. We must assume the truth of Schubarth's allegations, make all reasonable inferences in her favor, and properly place the ultimate burden of proof with the Defendants. *See Price*, 294 F.3d at 93. Under this standard, we conclude Schubarth has alleged sufficient facts to make it plausible that BVVG continues the profitable commercial operations of the Trust Agency, including marketing and sales of expropriated property in the United States. Further factual development may reveal these allegations to be false or unsupportable, but for now they must be presumed true and construed liberally. *Id.*; *see also Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. at 1316 ("[W]here jurisdictional questions turn upon further factual development, the trial judge may take evidence and resolve relevant factual disputes."); *Gibson v. Republic of Ireland*, 682 F.2d 1022, 1026 (D.C. Cir. 1982) ("[D]ismissal [is] at least premature in light of the dearth of fact-finding done by the district court thus far. Further fact-finding by the district

court . . . may yet render dismissal proper."). We therefore conclude Schubarth's claims against BVVG survive Defendants' motion to dismiss for want of subject matter jurisdiction at this stage.[6]

**B.**

Schubarth also seeks to abrogate defendant Germany's sovereign immunity under the FSIA's expropriation exception. The District Court properly concluded that this action cannot be maintained against Germany because, under the intervening authority of our decision *de Csepel*, a foreign state itself does not lose immunity under the expropriation exception unless the allegedly expropriated property is located in the United States. *See* 859 F.3d at 1107 ("A foreign state loses its immunity if the claim against it satisfies the exception by way of the first clause of the commercial-activity nexus requirement; by contrast, an agency or instrumentality loses its immunity if the claim against it satisfies the exception by way of the second clause."); 28 U.S.C. § 1605(a)(3) (Jurisdiction exists under clause one when expropriated property "is present in the United States in connection with a commercial activity carried on in the United States by the foreign state[.]"). As there is no dispute that the Estate or any property exchanged for it are located outside this country, the expropriation exception does not apply to Germany.[7]

---

[6] In light of this conclusion, we need not reach Schubarth's alternative argument that Germany waived BVVG's immunity in signing the FCN Treaty.

[7] Schubarth argues for the first time in her reply brief that she should have the opportunity to show jurisdiction over Germany because, she asserts, BVVG is its alter ego. Regardless of the merits of this argument, Schubarth forfeited it by failing to present it to the District Court. *See United States v.*

17

\* \* \*

For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.[8]

---

*Stover*, 329 F.3d 859, 872 (D.C. Cir. 2003) (arguments not presented to the district court "cannot be considered for the first time on appeal").

[8] After the District Court granted the motion to dismiss, Schubarth moved to alter the judgment under Rule 59 and for relief from judgment under Rule 60. She also submitted "newly found" evidence of a contract between BVVG and a U.S.-based company as well as a presentation by BVVG staff at a conference in Washington, D.C. The District Court denied both motions and refused to consider the new evidence because it could have been raised previously. In light of our reversal of the District Court's holding as to BVVG's commercial activity in the United States, we need not address these additional motions.