19-609-cv
Rukoro v. Federal Republic of Germany

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2019

(Argued: October 17, 2019            Decided:  September 24, 2020)

Docket No. 19-609


_____


VEKUII RUKORO, PARAMOUNT CHIEF OF THE OVAHERERO PEOPLE
AND REPRESENTATIVE OF THE OVAHERERO TRADITIONAL AUTHORITY,
THE ASSOCIATION OF THE OVAHERERO GENOCIDE IN THE USA, INC.,
BARNABAS VERAA KATUUO, INDIVIDUALLY AND AS AN OFFICER OF
THE ASSOCIATION OF THE OVAHERERO GENOCIDE IN THE USA, INC.,
ON BEHALF OF THEMSELVES AND ALL OTHER OVAHERERO
AND NAMA INDIGENOUS PEOPLES, JOHANNES ISAACK, CHIEF AND
CHAIRMAN OF THE NAMA TRADITIONAL AUTHORITIES ASSOCIATION,

*Plaintiffs-Appellants*,

v.

FEDERAL REPUBLIC OF GERMANY,

*Defendant-Appellant*.[1]


_____

---

[1] The Clerk of the Court is directed to amend the caption as above.

Before: WINTER, POOLER and PARK, *Circuit Judges*.

Plaintiffs—members of a putative class action on behalf of members and descendants of the Ovaherero and Nama indigenous peoples—appeal from the March 11, 2019 judgment of the United States District Court for the Southern District of New York (Swain, *J.*) dismissing their amended complaint against the Federal Republic of Germany for lack subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"). Plaintiffs seek damages for the enslavement and genocide of the Ovaherero and Nama peoples in what is now Namibia, as well as for property they alleged Germany expropriated from the land and peoples. As Germany is a foreign sovereign, the only path for the exercise of jurisdiction is if one of the exceptions to FSIA applies. The district court found none did, and dismissed the complaint.

We affirm, although we part ways from the district court on its tracing analysis. FSIA's takings exception provides that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present

in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States." 28 U.S.C. § 1605(a)(3).

The district court found that in pleading that Germany derived at least a portion of its wealth from property expropriated from Ovaherero and Nama, and those comingled funds were used to purchase property in New York, plaintiffs sufficiently alleged that "property exchanged for such property is present in the United States." *Id.* We disagree and find plaintiffs' allegations insufficient to trace the proceeds from property expropriated more than a century ago to present-day property owned by Germany in New York. While its tracing analysis was erroneous, the district court ultimately correctly concluded that no FSIA exception applied, leaving it without subject matter jurisdiction.

Affirmed.

———————————

KENNETH F. MCCALLION, McCallion & Associates LLP, New York, N.Y., *for Plaintiffs-Appellants.*

Thomas A. Holman, Holman Law, P.C. (*on the brief*), New York, N.Y., *for Plaintiffs-Appellants.*

Michael J. Lockman, Dontzin Nagy & Fleissig LLP (*on the brief*), New York, N.Y., *for Plaintiffs-Appellants.*

JEFFREY HARRIS, Rubin, Winston, Diercks, Harris & Cooke, L.L.P. (Walter E. Diercks, *on the brief*), Washington, D.C., *for Defendant-Appellee Federal Republic of Germany.*

POOLER, *Circuit Judge*:

Plaintiffs—members of a putative class action on behalf of members and descendants of the Ovaherero and Nama indigenous peoples—appeal from the March 11, 2019 judgment of the United States District Court for the Southern District of New York (Swain, *J.*) dismissing their amended complaint against the Federal Republic of Germany for lack subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"). Plaintiffs seek damages for the enslavement and genocide of the Ovaherero and Nama peoples in what is now Namibia, as well as for property they alleged Germany expropriated from the land and peoples. As Germany is a foreign sovereign, the only path for the

4

exercise of jurisdiction is if one of the exceptions to FSIA applies. The district court found none did and dismissed the complaint.

We affirm, although we part ways from the district court on its tracing analysis. FSIA's takings exception provides that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States." 28 U.S.C. § 1605(a)(3).

The district court found that in pleading that Germany derived at least a portion of its wealth from property expropriated from Ovaherero and Nama, and those comingled funds were used to purchase property in New York, plaintiffs sufficiently alleged that "property exchanged for such property is present in the United States." *Id.* We disagree and find plaintiffs' allegations insufficient to trace

5

the proceeds from property expropriated more than a century ago to present-day property owned by Germany in New York. While its tracing analysis was erroneous, the district court ultimately correctly concluded that no FSIA exception applied, leaving it without subject matter jurisdiction.

## BACKGROUND

We review a district court's dismissal of a complaint pursuant to Rule 12(b)(1) de novo, accepting as true all material factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016).

Plaintiffs Vekuii Rukoro, Johannes Isaack, The Association of the Ovaherero Genocide in the USA Inc., and Barnabas Veraa Katuuo (collectively, "Plaintiffs") assert this putative class action on behalf of members and descendants of the Ovaherero and Nama indigenous peoples. The amended complaint sets out in detail the events that we briefly summarize here. Germany colonized what was then known as German South West Africa, an area that is now Namibia, between roughly 1884 and 1903. Germany occupied Ovaherero and Nama land, seizing livestock, personal property, and natural resources for

6

its own use. The German authorities seized multiple tracts of ancestral land, displacing those who lived there and forcing many Ovaherero and Nama people into slavery.  In 1904, Germany sought to exterminate the Ovaherero and Nama peoples, lynching thousands of men, women, and children. Those that survived were moved into concentration camps. The Ovaherero and Nama people were treated as property, rented out as laborers, and worked until they died. Women and children were raped. Medical experiments were performed on live persons, while others were murdered and decapitated so that their remains could be studied by researchers who sought to prove the white race was superior. In 1985, the United Nations Economic and Social Council Commission on Human Rights issued a report deeming the events in Namibia a genocide.

The amended complaint sought damages under the Alien Tort Statute, federal common law, the law of nations, conversion, damages for conversion of various property rights and unjust enrichment, an accounting, the establishment of a constructive trust, as well as injunctive and declaratory relief aimed at forcing Germany and Namibia to allow Plaintiffs' participation in negotiations regarding the events detailed in the amended complaint.

In support of their claim that jurisdiction was proper under several FSIA exceptions, Plaintiffs alleged that certain human remains, including skeletons and skulls, were shipped from Germany to the American Museum of Natural History ("AMNH") in New York City (the "AMNH Remains"). The AMNH Remains "were originally collected by Professor Felix von Luschan, a German anthropologist and ethnologist at the Museum for Ethnology in Berlin from 1895-1910," and then remained a part of von Luschan's "private collection" until his widow sold the collection to the AMNH after von Luschan's death in 1924. App'x at 92 ¶¶ 298-99. Plaintiffs further allege that one of the few surviving copies of the "Blue Book," a record of the genocide prepared in 1918, is located at the New York Public Library. App'x at 93 ¶ 302.

Additionally, Plaintiffs allege that land, livestock, and personal property stolen by German colonial authorities were either sold or leased to private parties, and that Germany imposed fees, customs, tariffs, and taxes on commercial operations in the territory, with the monies deposited directly into the German treasury. Plaintiffs allege that at least some of these comingled monies were used to buy four real estate properties in New York City: (1) a

townhouse located at 119 East 65th Street, (2) a building located at 871 First Avenue, (3) a condominium located at 346 East 49th Street, and (4) a building located at 1014 Fifth Avenue (collectively, the "New York Properties"). Each of the New York Properties is "used in connection with [Germany's] commercial activities" including, among other things, the housing of German officials and employees and "cultural propagation, German-language programs, and other programs to develop American interest in the German people, language, culture, and country with the ultimate goal of commercial growth through cultural growth." App'x at 83.

As relevant to this appeal, Germany moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing the district court lacked subject matter jurisdiction under FSIA. Plaintiffs opposed and also sought to file a supplemental declaration, or in the alternative, a second amended complaint. The district court granted Germany's motion to dismiss, concluding that the allegations of the amended complaint did not adequately plead that either the takings or commercial activities exceptions applied. As discussed in greater detail below, the district court concluded that the allegations

9

were insufficient to allow jurisdiction under either the commercial activity or takings exceptions to FSIA. *Rukoro v. Federal Republic of Germany*, 363 F. Supp. 3d 436 (S.D.N.Y. 2019). The district court denied Plaintiffs leave to amend on the grounds that amendment was futile. *Id.* at 452-53. This appeal followed.

## DISCUSSION

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in federal court." *Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 559 (2d Cir. 2020) (internal quotation marks omitted). "[A] foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); *see also* 28 U.S.C. § 1604.

"[W]e review the district court's legal conclusions concerning sovereign immunity *de novo* and its factual findings for clear error." *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 199 (2d Cir. 2016) (internal quotation marks omitted). "A defendant seeking sovereign immunity bears the burden of establishing a prima facie case that it is a foreign sovereign." *Pablo Star*, 961 F.3d

10

at 559-60. The burden next shifts to Plaintiffs to demonstrate a FSIA exception applies. *Id.* at 560. "Determining whether that burden is met involves a review of the allegations in the complaint and any undisputed facts, and resolution by the district court of any disputed issues of fact." *Id*. "Once the plaintiff has met its initial burden of production, the defendant bears the burden of proving, by a preponderance of the evidence, that the alleged exception does not apply." *Id*.

The parties agree Germany is a foreign state, immune from liability unless an enumerated FSIA exception applies. Plaintiffs below invoked the commercial activities and takings exceptions. To the extent that Plaintiffs still seek to avail themselves of the commercial activities exception, 28 U.S.C. § 1605(a)(2), we affirm the district court for the reasons set out in its thorough opinion.[2] *Rukoro*, 363 F. Supp. 3d at 444-46. While we agree with the district court's ultimate conclusion that the takings exception does not apply, we disagree with its analysis.

---

[2] During oral argument, the Plaintiffs waived their arguments regarding the commercial activities exception.

## I. The takings exception

The FSIA's expropriation, or takings, exception strips a foreign sovereign's immunity against claims where:

> rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States[.]

28 U.S.C. § 1605(a)(3). "[I]n order to establish jurisdiction pursuant to the FSIA expropriation exception, a plaintiff must show that: (1) rights in property are in issue; (2) that the property was 'taken'; (3) that the taking was in violation of international law; and (4) that one of the two nexus requirements is satisfied," *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000). As to the nexus requirement, a plaintiff must show either that "such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state," or "such property is owned

12

or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity." *Id.*

Prior to the Supreme Court's decision in *Bolivarian Republic of Venezuela v. Helmerich & Payne International Drilling Co.*, a party seeking to avail itself of the expropriation exception needed only to make a nonfrivolous argument that the exception applied. 137 S. Ct. 1312, 1316 (2017). In *Helmerich*, the Supreme Court rejected that standard as inconsistent with the FSIA, and held that a legally valid claim was required to establish the elements of the expropriation standard. *Id.*

Thus, "a party's nonfrivolous, but ultimately incorrect, argument that property was taken in violation of international law is insufficient to confer jurisdiction." *Id*. Instead, "the relevant factual allegations must make out a legally valid claim that a certain kind of right is at issue (property rights) and that the relevant property was taken in a certain way (in violation of international law). A good argument to that effect is not sufficient." *Id.* (emphasis omitted).

While the Supreme Court in *Helmerich* addressed only the "property taken in violation of international law" element of the expropriation exception, *id.*, as

13

the district court recognized there is no reason to read the decision as applying the valid argument standard to only that element, rather than the entire exception. *Rukoro*, 363 F. Supp. 3d at 447. The Supreme Court held that foreign sovereign immunity should be dealt with "as near to the outset of the case as is reasonably possible," as "foreign sovereign immunity's basic objective" is "to free a foreign sovereign from suit." *Helmerich*, 137 S. Ct. at 1317 (emphasis omitted).

Here, the district court assumed without deciding that Plaintiffs alleged rights in property were taken in violation of international law. It then went on to find Plaintiffs also adequately pleaded that "property exchanged for the expropriated property" was present in the United States. *Rukoro*, 363 F. Supp. 3d at 448. The district court relied on the amended complaint that a "portion of [Germany's] enormous wealth . . . can be traced from the property it took from the Ovaherero and Nama peoples in violation of international law," App'x at 82 ¶ 258, and that those comingled funds were later used to purchase property in New York City. *Id.* Plaintiffs alleged that Germany's New York properties constitute "property exchanged for [expropriated] property" that is present in

14

the United States. App'x at 82 ¶ 258. The district court also considered a

declaration submitted by Plaintiffs' economist, Stan V. Smith, who opined that

based on the allegations of the amended complaint and declarations submitted

by others in support of Plaintiffs, "it can be reasonably concluded" that monies

so derived "may be reasonab[ly] presumed to have gone into the general coffers

of the German official banking system, and since money is fungible, [that]

German government monies were later used to purchase various properties in

New York." App'x at 301-02 ¶ 12.

In finding these allegations sufficed, the district court relied in part on

*Simon v. Republic of Hungary*, 812 F.3d 127 (D.C. Cir. 2016). There, the court

allowed plaintiff to proceed based on allegations that the sovereign "liquidated

the stolen property, mixed the resulting funds with their general revenues, and

devoted the proceeds to funding various governmental and commercial

operations," which it concluded "raise[d] a plausible inference that the

defendants retain the property or proceeds thereof, absent a sufficiently

convincing indication to the contrary." *Simon*, 812 F.3d at 147 (internal alteration

15

and quotation marks omitted). However, *Simon* predates *Helmerich*, calling into question its use of a plausibility standard.

The conclusory allegations in the amended complaint simply do not suffice to make a valid argument that property converted into currency and comingled with other monies in Germany's general treasury account can be traced to the purchase of property in New York decades later. The Smith Declaration fails to sufficiently bolster the allegations, as it states it is merely a "reasonable presum[ption]" that comingled funds were used to buy the properties. App'x at 302 ¶ 12. Such allegations may satisfy a plausibility standard, but not a valid argument standard. There may be circumstances where it is possible to trace the proceeds a sovereign received from expropriated property to funds spent on property present in the United States, but such circumstances are not present here.

In addition, we agree with the district court that the amended complaint "fails to allege that the expropriated property is present 'in connection with a commercial activity' carried on by Germany." *Rukoro*, 363 F. Supp. 3d at 448. The district court found that (1) the New York Properties are not being used in a

16

commercial manner, but rather in a manner usually deemed governmental; and (2) using the New York Properties to promote German culture is a governmental use, not a commercial one. *See id.* at 450-51. Plaintiffs also rely on the allegations of the proposed second amended complaint, which allege that the remains were actually sold to AMNH by a German state museum.

FSIA defines a "commercial activity carried on in the United States by a foreign state" as a "commercial activity carried on by such state and having substantial contact with the United States." 28 U.S.C. § 1603(e). A "commercial activity" is "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.*

The New York Properties are used to house Germany's mission to the United Nations, including its diplomats, as well as various institutions and programs engaged in propagating German culture. Plaintiffs argue that entering into contracts for repairs and maintenance renders the properties present in the

17

United States "in connection with" a commercial activity of a foreign state, but as the district court aptly noted, "[t]o conclude that contracts for restoration work or boiler repairs render these properties present 'in connection with' a commercial activity of a foreign state would expand the scope of the FSIA takings exception well beyond the boundaries of the 'restrictive' theory of sovereign immunity embodied in the statute." *Rukoro*, 363 F. Supp. 3d at 450. We interpret "in connection," as used in the statute, "narrowly." *Garb v. Republic of Poland*, 440 F.3d 579, 587 (2d Cir. 2006) (noting that "[a]cts are 'in connection' with . . . commercial activity so long as there is a 'substantive connection' or a 'causal link' between them and the commercial activity") (alterations in original) (citation omitted)).

Nor are we persuaded by Plaintiffs' argument that the use of the New York Properties in connection with "cultural propagation, German-language programs, and other programs to develop American interest in the German people, language, culture, and country with the ultimate goal of commercial growth through cultural growth" are commercial activities. App'x at 83 ¶ 261, 84-85 ¶¶ 263, 265, 86 ¶ 269. We agree with the district court that these sorts of

activities are the kind undertaken by sovereigns and not commercial activities.

*See, e.g., Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 614 (1992) (commercial activities must be of the sort "by which a private party engages in trade and traffic or commerce" (citation and internal quotation marks omitted)); *see also LaLoup v. United States*, 29 F. Supp. 3d 530, 551-52 (E.D. Pa. 2014) (allegations that a foreign sovereign maintained consulates, promoted business interests, and sponsored tourism are actions typically engaged in by a sovereign, and thus are insufficient to constitute commercial activity under the FSIA).

Our recent decision in *Pablo Star* does not compel a different result. There, the activity at issue was the advertising used to sell tickets to a walking tour that in turn was to promote tourism to Wales.  Advertising is an activity "performed by private-sector businesses." *Pablo Star*, 961 F.3d at 562. Taking out advertisements promoting activities that are meant to encourage tourism is not the same as actually providing the activities.

Plaintiffs also argue that the AMNH Remains are present in the United States in connection with a commercial activity carried on in the United States by

19

Germany. Neither the amended complaint, nor the proposed second amended complaint supports such a conclusion.

Analysis starts with "identify[ing] the act of the foreign sovereign State that serves as the basis for plaintiffs' claims." *Garb*, 440 F.3d at 586 . "[A]n action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit." *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 396 (2015). Courts must "zero[ ] in on the core of [the] suit: the . . . sovereign acts that actually injured [plaintiff]." *Id.* at 396; *see also Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 107 (2d Cir. 2016) (defining "gravamen" as "[t]he substantial point or essence of a claim, grievance, or complaint" (alteration in original) (quoting Black's Law Dictionary 817 (10th ed. 2014))).

Here, Plaintiffs argue that Germany engaged in the requisite commercial activity when it sold the remains of genocide victims to the AMNH. The proposed second amended complaint alleges that the remains were shipped from the "Museum für Völkerkunde, Berlin, Germany" to the AMNH, and that such "[t]rading and trafficking [of] human crania are not typical sovereign activities, but quintessential 'trade and traffic.'" Appellants' Br. at 13-14.

20

However, as the district court correctly found, "the gravamen of the [Amended Complaint] is the taking of Plaintiffs' land, livestock, and personal property in connection with the Ovaherero and Nama genocide." *Rukoro*, 363 F. Supp. 3d at 445. Germany's seizure of "land, livestock, and personal property" is not a commercial activity within the meaning of FSIA. *Id.*

Moreover, Plaintiffs fail to allege that the AMNH Remains are currently present in the United States in connection with a German commercial activity. Even assuming for argument's sake that Germany engaged in an international commercial market for bones when it sold the remains to the AMNH, there are no allegations that Germany continues to engage in such sales. The statute requires that the commercial activity be "carried on in the United States by the foreign state," 28 U.S.C. § 1605(a)(3), which requires the activity at issue be current. The legislative history supports such a reading:

> The first category involves cases where the property in question or any property exchanged for such property is present in the United States, and where such presence is in connection with a commercial activity carried on in the United States by the foreign state, or political subdivision, agency or instrumentality of the foreign state.

21

H.R. Rep. No. 94-1487, at 19 (1976), *reported at* 1976 U.S.C.C.A.N. 6604, 6618. *See also Schubarth v. Fed. Republic of Ger.*, 220 F. Supp. 3d 111, 115 (D.D.C. 2016) ("Courts assessing the FSIA's commercial activity requirement, however, have looked for evidence of recent or ongoing transactions") (collecting cases), *aff'd in part, rev'd in part*, 891 F.3d 392, 399 n.4 (D.C. Cir. 2018) (noting that "[t]his interpretation is supported by the FSIA's plain text, which employs the present tense").

**II.     Leave to amend**

"When the denial of leave to amend is based on a determination that amendment would be futile, a reviewing court conducts a de novo review." *Eastman Kodak Co. v. Henry Bath, LLC*, 936 F.3d 86, 98 (2d Cir. 2019) (citation, italics, and internal quotation marks omitted). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies . . . ." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).  Setting aside the issues of undue delay and prejudice, we agree with the district court that the real problem is that even taking the allegations in the proposed second amended complaint as true, Plaintiffs still fail to adequately

allege jurisdiction. Neither the revised complaint nor the proposed supplemental declaration sufficiently alleges that the expropriated property is currently present in the United States in connection with commercial activity. The repatriation of certain Hawaiian and Alaskan remains from Germany does not rise to the level of commercial activity, nor is it sufficiently related to the transfer of the AMNH remains a century ago.

## CONCLUSION

For the reasons given above, we affirm the district court's dismissal for lack of subject matter jurisdiction. The terrible wrongs elucidated in Plaintiffs' complaint must be addressed through a vehicle other than the U.S. court system.